IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | : Civil Action No. 3:05-CV-1328-L |
| MEGAFUND CORPORATION, STANLEY A. LEITNER, SARDAUKAR HOLDINGS, IBC., BRADLEY C. STARK, CIG, LTD., and JAMES A. RUMPF, Individually and d/b/a CILAK INTERNATIONAL, | : |
| Defendants, | : |
| and | |
| PAMELA C. STARK, | : |
| Relief Defendant. | : |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 8 2005
CLERK, U.S. DISTRICT COURT
By _____
Deputy

## AMENDED COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this case against Stanley A. Leitner, Megafund Corp., Bradley C. Stark, Sardaukar Holdings, IBC., James A. Rumpf, individually and d/b/a Cilak International, and CIG, Ltd. (collectively, "Defendants") and Relief Defendant Pamela Stark, and would respectfully show the Court as follows:

## SUMMARY

1.  The Defendants have been engaged in an unregistered and fraudulent securities offering that lures investors with false promises of annual investment returns of 120 percent. Since June 2004, Defendants have fraudulently raised approximately $13.8 million from at least 70 investors.

2.  The scheme was orchestrated by Defendants Leitner, Rumpf and Stark, and perpetrated through their companies, Megafund, CIG and Sardaukar, respectively. The Defendants are targeting Christian ministries and other non-profit organizations with claims that a portion of the profits generated will benefit charitable causes.

3.  Virtually every representation made to investors about the nature and terms of the investment is a fabrication. The Defendants are operating what is commonly known as a High Yield Investment Program scheme, and the Defendants are using investors' funds in a manner other than represented. In particular, Leitner transferred nearly $11 million of investor funds to Rumpf's offshore company, CIG. Subsequently, Stark, a convicted felon, through his company Sardaukar, received $9.5 million of those funds. Stark quickly began squandering investor funds on luxury cars, jewelry and travel.

4.  The Commission, in the interest of protecting the public from further fraudulent activities, brings this action seeking an order permanently enjoining the Defendants from further violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] ("Exchange Act"), and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Commission also seeks orders requiring

the Defendants to pay civil monetary penalties and requiring the Defendants and Relief Defendant to disgorge all ill-gotten gains, plus prejudgment interest thereon.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants have, directly and indirectly, made use of the means or instrumentalities of interstate commerce and/or the mails in connection with the transactions described in this Amended Complaint.

6.  Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts and transactions described herein took place in the Northern District of Texas.

## DEFENDANTS

7.  **Stanley A. Leitner ("Leitner")**, age 66, is the president and chief executive officer of Megafund Corp. Leitner asserted his Fifth Amendment privilege against self-incrimination and refused to answer questions concerning his activities regarding Megafund in the Commission's investigation into this offering.

8.  **Megafund Corporation ("Megafund")**, is a Texas corporation with its principal place in business in Flower Mound, Texas. Megafund's securities offerings are not registered with the Commission.

9.  **Sardaukar Holdings, IBC ("Sardaukar")**, is a British Virgin Island corporation formed in October 2004 by Bradley C. Stark. Sardaukar is the apparent "Trader" in the scheme described herein and maintains a bank account at JP Morgan

Chase Bank ("Chase"), as well as commodities brokerage accounts at Man Financial Corp. ("Man Financial") and RefcoFX Associates ("Refco").

10. **Bradley C. Stark ("Stark")**, age 30 and a resident of Riverside, California, is the secretary of Sardaukar and the sole signatory on Sardaukar's bank and brokerage accounts. In May of 2003 Stark was convicted of possession of counterfeit government securities in the United States District Court, Eastern District of New York, and was sentenced to 18 months imprisonment. During the course of this scheme, Stark has been on supervised release, pursuant to his criminal sentence.

11. **James A. Rumpf ("Rumpf")**, age 67, is a resident of Addison, Texas and the general manager and control person of CIG. A self-described "portfolio manager", Rumpf also maintains a bank account under the assumed name, Cilak International,[1] which received at least $300,000 of investor funds from Megafund. Rumpf also appears to be a member of an anti-government group, the Republic of Texas, which claims the State of Texas was never legally annexed to the United States and, therefore, residents of Texas are not subject to federal laws or statues.

12. **CIG, Ltd. ("CIG")**, an entity controlled by Rumpf, purports to be an Anguillan corporation domiciled in St. Maarten, N.W.I. CIG received, in an offshore bank account, over $11 million of investor funds from Megafund, of which CIG transferred approximately $9.5 million to defendant Sardaukar Holdings (an entity controlled by Defendant Stark).

---

[1] The name Cilak appears to be an acronym or abbreviation for Christ is Lord and King. Rumpf, who identifies himself as an "Overseer" of Cilak, has characterized Cilak as a "Christian Humanitarian Corporation."

## RELIEF DEFENDANT

13. **Pamela C. Stark** is the wife of Bradley Stark. She received over $1 million in investor funds from Sardaukar's bank account.

## THE FRAUDULENT SCHEME

### A. The Investment

14. Under the direction of Leitner, Megafund has raised approximately $13.8 million since June 2004 from over 70 investors throughout the nation, including Texas.

15. Megafund's investment offering is a classic High Yield Investment Program scheme, wherein investors are led to believe that a "Trader" with either special abilities or access to restricted markets can produce phenomenal investment returns. The Defendants stopped paying purported "returns" to investors shortly after receiving an inquiry from the SEC in April 2005.

16. In June 2004, Leitner opened a Megafund bank account and began accepting investor funds. At the time, Megafund's offices were located in Addison. Subsequently, Megafund moved it operations to a Flower Mound office park.

17. Leitner solicits investments through personal contact with prospective investors and through written promotional materials. Many of the defrauded victims have affiliations with religious institutions.

18. Megafund's written promotional materials represent that: 1) investors' funds will be pooled and placed into "an account at a major U.S. Brokerage firm" where an unnamed "Trader" will engage in "arbitrage" transactions involving the purchase and sale of "stocks, bonds, securities and derivatives of such on margin or otherwise" and "Tri-Party Repurchase Agreement transactions;" 2) investors will receive a "ten percent



profit" per month and that their principal investment "is never at risk;" 3) investors must not discuss the investment with anyone without receiving permission from Megafund; and, 4) a portion of trading profits will be used for humanitarian purposes.

19. Investors who invest with Megafund are required to execute a "joint venture" agreement, which is signed by Leitner on behalf of Megafund. The agreement states that Megafund "has an association and a relationship with a Trader to facilitate Client's funds into Tri-Party Repurchase Agreement transactions ("Tri-Party Repo") as well as other types of investments." Megafund investors are also required to sign a "Non-Disclosure, Non-Circumvention and Non-Solicitation Agreement" which references "the standard Non-Circumvention and Non-Disclosure rules" and states that any communication, written or verbal, received form Megafund or Leitner "will not be released by [the investor] to any third party." The joint venture agreement further provides that the "penalty for any breach of this covenant of confidentiality will be the loss of any and all profits that [the investor] has received." Finally, the agreement further requires the investor to execute a "Limited Power of Attorney" naming Leitner as "Attorney in Fact" for all purposes related to the investor's investment in Megafund.

20. Pursuant to instructions from Leitner, investors wire-transferred their investment funds to a Megafund accounts Wells Fargo Bank in Addison and SouthTrust Bank in Waxahachie.

21. Leitner caused the bulk of investor funds to be provided to Rumpf's companies. Cilak received approximately $300,000; CIG received approximately $11 million in its offshore bank account in St. Maarten. These transfers were apparently made pursuant to a Joint Venture Agreement between Leitner and Rumpf, through their

respective companies, Megafund and CIG. By the terms of the agreement, Rumpf promised to pay Megafund monthly returns of 30 percent on the invested money, claiming (as did Megafund to its investors) that CIG had an association with a Trader who was to generate these astronomical returns. The agreement also falsely stated that the investment principal was insured against loss.

22. For many months, Megafund paid purported returns to investors, not from any type of generated earnings, but rather from funds of other investors and from funds it borrowed from another company. This practice was not disclosed to investors. Rather, they were led to falsely conclude that the Megafund program was operating successfully.

23. Of the $11 million of investor funds transferred to CIG Ltd., approximately $9.5 million was subsequently transferred to a Sardaukar account controlled by Stark at Chase Bank. Stark then transferred a total of $2.6 million from Sardaukar's Chase account to Megafund. Further, Stark also transferred a total of $2.9 million from the Chase account to commodity brokerage accounts at Man Financial and Refco Financial Services. Stark used approximately $2 million of investor funds to purchase stock in Moondoggie, Inc., a Las Vegas-based high tech company.

24. Leitner has used investor funds for personal purposes and for other purposes that were not disclosed to investors. In particular, Leitner transferred approximately $1 million to a California entertainment company to finance the production of a movie, and approximately $650,000 to a Texas cable television company.

25. From the Sardaukar Chase account, Stark has spent approximately $350,000 on luxury automobiles, $117,000 on travel and entertainment, $41,000 on jewelry and has transferred over $1 million to his wife, Pamela C. Stark.

26. The disposition of the $1.8 million of investor funds that was received by Rumpf through his companies Cilak and CIG, and not provided to Sardaukar, is not known. Rumpf however, has used approximately $10,000 of Cilak funds to pay apartment rental fees.

### B. Material Misrepresentations and Omissions

27. The Megafund investment program is completely bogus. The offer and sale of the Megafund program is rife with false and misleading statements and failure to disclose material facts.

28. Leitner and the Megafund promotional literature entice investors with the promise of astronomical investment returns of up to 120% annually. This representation is coupled with the promise that investors' funds are "never at risk". These representations are completely false. The Defendants do not have a trading program that generates the risk-free returns promised to investors.

29. Leitner and Rumpf have falsely represented that investors' funds will be placed in an account at a "major U.S. Brokerage firm" registered with the SEC or the NASD. In reality, the majority of investor funds, approximately $11 million, were transferred offshore to an account styled "CIG, Ltd." at Rbbt Bank in St. Maarten. CIG is not a "major U.S. Brokerage firm" and is not registered with the SEC or the NASD.

30. The Defendants promise returns between 5% and 10% per-month for up to 12 months, realized through the activities of the "Trader". The Defendants have no reasonable basis for making these projections.

31. The Defendants use fraudulent and falsified written materials in connection with their scheme. In February 2005, the Defendants provided an Oregon investor,

identified below, with a letter purported to be written by an attorney, Megafund's "Compliance Counsel". The letter asserts that investor funds are insured and secured in accounts at various domestic institutions. The letter is a complete fabrication.

32   Defendant Leitner falsely represented to an investor that for two years he had investigated the type of trading program being utilized. Also, he falsely represented that he had known the Trader (Stark) for over a year.

33.  Further, in support of their assertion to investors that their investment funds are protected by an insurance policy, Defendants have produced a purported certificate of insurance. In truth, there is no insurance policy; the purported certificate is bogus.

34.  The Defendants further failed to disclose to investors that investor funds are being used to pay for extravagant personal expenses and luxury items, and that $650,000 has been diverted to a Texas cable television company, $1 million dollars has been diverted to pay a Hollywood studio to produce a movie and approximately $350,000 has been spent on luxury automobiles.

C.   **Lulling Activity**

35.  Leitner, individually or in concert, in an effort to lull disgruntled investors and prevent them from taking legal or other action, recently has provided investors with false information, including the following:

   a.   an email representing to an investor that his entire investment (nearly $10 million) would be "released incrementally over the next week to two weeks";

   b.   a representation that the all investment funds will be returned as soon as they are converted to U.S. currency;

   c. a representation that the investment funds are being held up by the Department of Homeland Security; and

   d. a representation that investor funds in a New York account were frozen by the terms of a temporary restraining order.

  **D.** **Victims of the Scheme**

  36. Defendants have defrauded approximately 70 investors through this scheme.

  37. From February through May 2005, Gary Lancaster, through Lancorp Financial Group, LLC, invested over $9.3 million in the Megafund program by wiring investment funds from Oregon to a Megafund bank account in Addison.

  **E.** **Receipt of Funds by Relief Defendant**

  38. The Relief Defendant received investor funds for no apparent consideration. From December 13, 2004 through April 15, 2005, Relief Defendant Pamela C. Stark received approximately $1 million from Defendants Sardaukar and Bradley C. Stark, to which she was not entitled, and for which she did not provide adequate consideration.

**FIRST CLAIM**
**Violations of Section 17(a) of the Securities Act**

  39. Plaintiff Commission repeats and incorporates paragraphs 1 through 38 of this Complaint by reference as if set forth *verbatim*.

  40. The Defendants, directly or indirectly, singly or in concert with others, in connection with the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

41. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 38 above.

42. With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, the Defendants were negligent in their actions regarding the representations and omissions alleged herein. With respect to violations of Section 17(a)(1) of the Securities Act, the Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

43. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

44. Plaintiff Commission repeats and incorporates paragraphs 1 through 38 of this Complaint by reference as if set forth *verbatim*.

45. The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and

instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

46. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 38 above.

47. The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

48. By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM
### Violations of Section 5(a) and 5(c) of the Securities Act

49. Plaintiff Commission repeats and incorporates paragraphs 1 through 38 of this Complaint by reference as if set forth *verbatim*.

50. Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been,

directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

51. As described in paragraphs 1 through 38, the investments described in detail herein, have been offered and sold to the public through a general solicitation of investors. No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.

52. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM

### Claim against Relief Defendant as Custodian of Investor Funds

53. Plaintiff Commission repeats and incorporates paragraphs 1 through 38 of this Complaint by reference as if set forth *verbatim*.

54. The Relief Defendant received funds and property from one or more of the Defendants, which are the proceeds, or are traceable to the proceeds, of the unlawful activities of Defendants, as alleged in paragraphs 1 through 38 above.

55. The Relief Defendant obtained the funds and property alleged above as part of and in furtherance of the securities violations alleged in paragraphs 1 through 38

and under circumstances in which it is not just, equitable or conscionable for her to retain the funds and property. As a consequence, the Relief Defendant has been unjustly enriched.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

56. Temporarily, preliminarily and permanently enjoin the Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder and order incidental emergency relief, including an order freezing assets, appointing a receiver and other relief intended to preserve the *status quo*.

57. Order the Defendants and Relief Defendant to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, and order the Defendants to pay prejudgment interest on that amount.

58. Order civil penalties against the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

59. Such further relief as this Court may deem just and proper.

For the Commission, by its attorneys:

Dated: July 18, 2005

                          Respectfully submitted,

                          STEVE KOROTASH
                          Oklahoma Bar No. 5102

                          SECURITIES & CHANGE
                          COMMISSION
                          801 Cherry Street, Suite 1900
                          Fort Worth, Texas  76102
                          (817) 978-3821/-6490
                          FAX:  (817) 978-4927
                          Korotashs@sec.gov

Of Counsel:

Stephen Webster, Texas Bar No. 21053700
Eric Werner, Texas Bar No. 24033919
Julia Huseman, Texas Bar No. 00785192

Securities and Exchange Commission
Fort Worth District Office
801 Cherry Street, 19th Floor
Fort Worth, TX  76102-6882

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the *Amended Complaint* as presented to the Court for filing in the above-captioned case on the 18th day of July, 2005 and I served a true and correct copy of the foregoing document by depositing a copy thereof in an authorized Federal Express depository at Fort Worth, Texas, with overnight express charges prepaid and addressed to the following parties and persons:

Scott Baker
10830 North Central Expressway
Suite 475, B 4
Dallas, Texas 75231
*Attorney for Megafund Corp. and
Stanley Leitner*

Michael J. Quilling
Quilling Selander Cummiskey Lownds
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
(214) 871-2111 (fax)
mquilling@qsclpc.com
*Court Appointed Receiver*

Jeffrey Henderson
Henderson & Lyman
175 West Jackson Boulevard
Suite 240
Chicago, Illinois 60604
jhenderson@henderson-lyman.com
*Attorney for Bradley Stark, Pamela Stark
and Sardaukar Holdings, IBC.*

Stephen J. Korotash