IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 3-05-CV-1328-L |
| MEGAFUND CORPORATION, ET AL. | § § § § | |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Michael J. Quilling, as Receiver for Sardaukar Holdings, IBC and related entities, has filed a motion to make an interim distribution to claimants of the Sardaukar Holdings Receivership Estate. For the reasons stated herein, the motion should be granted.

I.

This is a civil action brought by the Securities and Exchange Commission ("SEC") against Bradley C. Stark, Stanley A. Leitner, James A. Rumpf and their respective companies, Sardaukar Holdings, IBC ("Sardaukar"), Megafund Corporation ("Megafund"), and CIG, Ltd. ("CIG"). In its complaint, the SEC alleges that the defendants raised approximately $13.8 million from at least 70 investors through the sale of unregistered securities by making false representations about the expected rate of return on their investments and by promising that a portion of the profits generated from the sale would be used to benefit charitable causes. This conduct, if proved, constitutes a violation of the federal securities laws.[1]

---

[1] The SEC alleges violations of Sections 5(a), (c) & 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), (c) & 77q(a), Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

On July 5, 2005, the court appointed Michael J. Quilling as the receiver for the various defendants and relief defendants, including Sardaukar. In that capacity, Quilling was authorized to:

> take[ ] exclusive jurisdiction and possession of the assets, monies, securities, claims in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of [Stark and Sardaukar] and any entities they control ("Receivership Assets"), and the books and records of Defendants and Relief Defendants ("Receivership Records").

*See* Order, 7/5/05 at 1-2, ¶ I(1). As of today, the Receiver has $2,227,146.73 in cash and other assets on hand available for distribution to six claimants of the Sardaukar Holdings Receivership Estate. Of this sum, the Receiver proposes distributing $1,900,000.00 to claimants on a pro rata basis and reserving $327,146.73 for payment of attorney's fees, accounting fees, and other expenses.[2] That means each claimant would received approximately 30.22% of their claim.

The Receiver was previously ordered to post a copy of his proposed interim distribution plan on his website with notice to all interested parties that any objections must be filed with the court by February 12, 2007. John W. Stark, Jr. and Barbara Stark ("the Starks") timely filed a "limited objection" to the motion. No other objections have been received. The SEC, through its regional counsel, has consented to the motion.

II.

As grounds for their objection, the Starks argue that they are entitled to compensation from Sardaukar for "prior value given," and that the distribution of proceeds to defrauded investors will prejudice their ability to receive such compensation. On February 2, 2007, the Starks filed claims against the Sardaukar Holdings Receivership Estate for:

---

[2] Currently pending before the court is the Receiver's fourth interim application for payment of $112,439.00 in attorney's fees, $4,714.42 in expenses, and $3,160.00 in accounting fees incurred from July 1, 2006 through January 31, 2007. If no objections are filed, that motion will be ripe for determination after March 2, 2007.

| | |
|---|---|
| $26,432.78 | Salary earned by John Stark and paid by Sardaukar for the period from April 1, 2005 through June 24, 2005 ($23,001.13), plus unpaid salary earned for the period from June 25, 2005 through July 5, 2005 ($3,431.65) |
| $3,000.00 | Military social security obligations paid by Sardaukar on behalf of John Stark |
| $24,042.24 | Rent paid by Brad and Pamela Stark for living at the Riverside, California home owned by John and Barbara Stark, together with expenses for operating Sardaukar out of the home |
| $95,154.43 | Compensation as repayment of a $90,000.00 loan to Brad Stark for his business use and as further consideration for Sardaukar's use of the Riverside, California home |
| $3,999.33 | Travel expenses paid by Sardaukar for John Stark |
| $12,744.25 | Travel expenses paid by Sardaukar for Barbara Stark |
| $13,000.00 | Salary earned by Barbara Stark and paid by Pamela Stark, owner of Tesori Fine Arts and Collectibles, for the period from April 1, 2005 through June 20, 2005 ($10,400.00), plus unpaid salary earned for the period from June 21, 2005 through July 5, 2005 ($2,600.00) |

The magistrate judge has recommended that those claims be disallowed because "the Starks failed to prove that they accepted any of these payments from Sardaukar in good faith." *See SEC v. Megafund Corp.*, No. 3-05-CV-1328-L, rec. at 3 (N.D. Tex. Feb. 7, 2007).[3] Although the Starks now contend that they are entitled to compensation from Sardaukar even if ordered to return the funds to the Estate, no authority is cited for that novel proposition.

---

[3] The Starks asserted the same claims in a lawsuit brought by the Receiver to recover more that $173,000.00 of investor funds allegedly transferred to them by their son, Brad, and his wife, Pamela, from Sardaukar accounts. On February 7, 2007, the court granted summary judgment in favor of the Receiver, holding that the Starks failed to prove that they accepted any of these payments from Sardaukar in good faith. *See Quilling v. Stark*, No. 3-05-CV-1976-BD, 2007 WL 415351 at *4 (N.D. Tex. Feb. 7, 2007).

Moreover, even if the claims could somehow be allowed, the Starks are not eligible for payment until all investor claims are paid in full. It is widely accepted that:

> Where a receiver is presented with competing claims to property, the order of priority of payment is (1) administrative expenses; (2) return of third-party property held in trust or otherwise by the defendant; (3) payment of priority government claims; (4) payment of secured parties from secured assets; (5) payment to creditors securing the appointment of the receiver as equity may require; (6) pro rata payment to general creditors; (7) surplus to the defendant for whom the receiver was appointed.

III Clark on Receivers § 667 at 1198 (3d ed. 1959). *See also Quilling v. Trade Partners, Inc.*, No. 1:03-CV-0236, 2006 WL 3694629 at *1 (W.D. Mich. Dec. 14, 2006) ("As an equitable matter in receivership proceedings arising out of a securities fraud, the class of fraud victims takes priority over the class of general creditors with respect to proceeds traceable to the fraud."). The assets recovered to date by the Receiver are all traceable to investor funds. Thus, to the extent the Starks have valid claims against Sardaukar, they are general creditors who will not be paid until all defrauded investors are fully compensated. This objection should be overruled.

### III.

After considering the evidence and the written submissions of the parties, the court determines that the Receiver's proposed interim distribution plan should be approved. The Receiver currently has $2,227,146.73 in cash and other assets on hand. Of this sum, the Receiver asks to reserve $327,146.73 to cover past and future expenses, including attorney's fees and accounting fees. The court finds that this sum should be reserved from funds available for interim distribution.

The court previously approved six claims totaling $6,288,266.38. If $327,146.73 is reserved from the $2,227,146.73 on hand, $1,900,000.00 remains available for immediate distribution to claimants on a pro rata basis. *See SEC v. Forex Asset Management LLC*, 242 F.3d 325, 331 (5th Cir. 2001) (approving pro rata distribution to investors). Therefore, each claimant should be paid in

accordance with the schedule attached as Exhibit "1" to the Receiver's motion. The Receiver should issue interim distribution checks to each claimant in the amounts set forth in the schedule. The checks shall be void if not cashed within 45 days from the date of issuance.

## RECOMMENDATION

The Receiver's motion to make an interim distribution to claimants of the Sardaukar Holdings Receivership Estate [Doc. #255] should be granted. The court should approve the Receiver's interim distribution plan in accordance with the above recommendation.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 14, 2007.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE